UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:22-CV-38-CRS

JEREMY BULLOCK                                                                   PLAINTIFF

v.

JASON WOOSLEY, et al.                                            DEFENDANTS

**MEMORANDUM OPINION & ORDER**

In this 42 U.S.C. § 1983 action, plaintiff Jeremy Bullock, *pro se*, sued defendants Grayson County Jailer Jason Woosley, Grayson County Detention Center ("GCDC") Transport Officer Robbie Alexander, and Head Nurse Rita Wilson in their individual and official capacities. Bullock alleged that the defendants were deliberately indifferent to his legitimate medical needs. This matter is now before the court on the parties' cross Motions for Summary Judgment. Def. Mot. for Sum. Judg., DN 35; Bullock Mot. for Sum. Judg., DN 38. Bullock's filing is simultaneously a Response to the defendants' Motion and a Motion for Summary Judgment.

These motions were filed after the court granted Bullock and the defendants' Motions for Extension of Time, DN 27; DN 28, and after the court advised Bullock that, "in order for him to defeat a motion for summary judgment, he must demonstrate a genuine issue of material fact for trial and must support this assertion by citing to facts that can be presented in a form that would be admissible in evidence." Order, DN 32 at 2. Bullock does not contend that discovery is incomplete. The matters are ripe for adjudication.

## I.     Legal Standard

A court may grant a motion for summary judgment where it finds that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of specifying the basis for its

motion and identifying that portion of the record that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party must produce specific facts demonstrating a genuine dispute of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6–7 (6th Cir. May 5, 2010) (citations omitted). Additionally, the Sixth Circuit Court of Appeals has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter" his burden of showing a genuine dispute for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010).

## II. Discussion

At the time of the alleged events, Bullock was a pretrial detainee at GCDC. Compl., DN 1 at 1, 4. Bullock alleges that Jailer Woosley, Officer Alexander, and Nurse Wilson were deliberately indifferent to his serious medical needs. Specifically, Bullock alleges that he tore his ACL after falling in the GCDC restroom and that, thereafter, the defendants declined to provide him with a walking assistive device or access to "handicap eqipt [sic] facilities," and subjected him to "improper housing," namely "isolation . . . instead of available medical housing." *Id.* at 4–5.

Bullock filed 22 grievances between March 19, 2021 and May 9, 2022. Grievances, DN 35-33–DN 35-44, DN 37-1 at 2, 5–6, 7–9, 11–14. Ten of the 22 grievances concern walking assistive devices, access to handicap equipped facilities, or both. Grievances, DN 35-33, 35-37, 35-38, 35-40–44; DN 37-1 at 5, 11. Eight grievances concern Bullock's housing assignment. Grievances, DN 35-34–36, DN 37 at 2, 7–9, 14. Only three grievances implicate the defendants: Grievance Nos. 10380, DN 35-37; 9749, DN 37-1 at 2; and 9755, *id.* at 8.

Grievance No. 10380 implicates the actions of Officer Alexander and Nurse Wilson. DN 35-37. In it, Bullock asserted that he requested Officer Alexander to provide him with a knee brace, but that Officer Alexander indicated that he needed permission from Nurse Wilson to do so. *Id.* Also, Bullock asserted that Nurse Wilson refused to request a knee brace from Bullock's medical provider, Dr. Ted Rogers. *Id.* Bullock claimed such actions constitute "cruel and unusual punishment." *Id.* In the "Response" section of the grievance, a GCDC official wrote the following: "I spoke to the doctors [sic] office and they said you were given a brace they thought according to the records. I will check with them today." *Id.*

Grievance Nos. 9749, DN 37-1 at 2, and 9755, DN 37-1 at 8, implicate Jailer Woosley. In Grievance No. 9749, Bullock complained of his housing assignment and requested Jailer Woosley to reassign him to a different housing unit. DN 37-1 at 2. In the "Response" section, a GCDC official wrote the following: "You are already in [protective custody] because of your repeated claims that your life is in danger if you are placed with any Southern Indiana federal inmates. . . . There is no cruel and unusual punishment in this situation as you made repeated claims that your life was in danger and we are housing you accordingly." *Id.* Likewise, Bullock complained of his housing assignment in Grievance No. 9755, in which he requested to be "seen by" Jailer Woosley "to talk" about his housing situation. DN 37-1 at 8. In the "Response" section, a GCDC official wrote the following: "Asked and answered." *Id.*

The defendants argue that Bullock failed to appeal these grievances in conformity with GCDC policy, and so failed to exhaust his prison administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Def. Mot. for Sum. Judg., DN 35-1 at 16–18. Thus, they request entry of a summary judgment in their favor.

Bullock argues that he appealed these grievances in compliance with GCDC policy. Resp., DN 37 at 4, 8, 9. However, Bullock did not provide the court with any proper evidence to controvert the defendants' assertion that Bullock failed to exhaust his administrative remedies. Accordingly, as explained below, the court agrees with the defendants that this action must be dismissed and a judgment entered in the defendants' favor because there is no record evidence to show that Bullock exhausted his administrative remedies.

**A. The PLRA and GCDC Policy require exhaustion of administrative remedies.**

The PLRA requires prisoners to exhaust their available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997(e). To properly exhaust administrative remedies, "a grievance must identify each defendant eventually sued" and allege misconduct by each defendant. *Bell v. Konteh*, 450 F.3d 651, 653–54 (6th Cir. 2006). The allegations in the grievance must give "sufficient notice of the matter being grieved." *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 688 (6th Cir. 2013) (citing *Reed-Bay v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010)). Additionally, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants. *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011). Thus, it is the defendants' burden "to show that there was an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 325). That burden is satisfied where the defendants produce an administrative policy that governs the filing of grievances and show that the plaintiff failed to fully exhaust his administrative remedies pursuant to the policy. *See Woodford*, 548 U.S. at 90.

Here, the defendants produced evidence of such a policy. GCDC has an established administrative review process that prisoners must comply with to satisfy the PLRA. GCDC Policy, DN 35-45 at 1–4. To comply with the policy, prisoners must first submit a grievance which states "fully the time, date, names of the deputies or other persons involved and pertinent details of the issue prompting the grievance, including the names of any witnesses." *Id.* at 2. A shift supervisor will respond within ten days "following the investigation of the grievance . . . ." *Id.* at 3. If the prisoner is unsatisfied with the "disposition of the grievance by the Shift Supervisor," he "may

appeal in writing within five (5) days of the initial response." *Id.* Said appeal will be reviewed by "the Colonel, who shall examine the original complaint and records of any subsequent investigation" and issue a response within "five (5) days from the date of the appeal . . . ." *Id.* If the prisoner is unsatisfied with the colonel's response, he may appeal in writing to the "Chief Deputy." *Id.* Finally, if the prisoner is unsatisfied with the chief deputy's response, he may appeal in writing to Jailer Woosley, who has "final authority over the appeal." *Id.*

### B. Bullock failed to exhaust his administrative remedies.

#### 1. Only three grievances implicate the defendants.

As mentioned earlier, Bullock filed 22 grievances between March 19, 2021 and May 9, 2022. Grievances, DN 35-33–DN 35-44, DN 37-1 at 2, 5–6, 7–9, 11–14. Only three, however, implicate the defendants named in this action. To properly exhaust claims against the defendants, there must be grievances that name them. *Bell*, 450 F.3d at 653–54 (explaining that a grievance must identify each defendant sued and allege misconduct by each defendant); GCDC Policy, DN 35-45 at 2 (explaining that a grievance must identify the "names of the deputies or other persons involved"). Without such a requirement, grievances would not give "sufficient notice of the matter being grieved" to the alleged offenders. *Maxwell*, 538 F. App'x at 688; *Reed-Bay*, 603 F.3d at 325. Thus, Bullock's failure to name Jailer Woosley, Officer Alexander, or Nurse Wilson in nineteen grievances means that Bullock cannot bring claims against the defendants based on those nineteen grievances. *Woodford*, 548 U.S. at 90 (explaining that proper exhaustion requires compliance with agency policy).

#### 2. Bullock did not appeal Grievance No. 10380, which implicated Officer Alexander and Nurse Wilson.

Only one grievance implicates the actions of Officer Alexander and Nurse Wilson: Grievance No. 10380, DN 35-37. To fully exhaust his administrative remedies as to his claims

against Officer Alexander and Nurse Wilson, Bullock was required to appeal the informal disposition of Grievance No. 10380 first to the colonel, then to the chief deputy, and, finally, to Jailer Woosley. GCDC Policy, DN 35-45 at 3. Similarly, to defeat Officer Alexander and Nurse Wilson's Motion, Bullock must point to record evidence to show that he appealed this grievance. *Laster*, 746 F.3d at 726 (explaining that the non-movant must identify evidence that creates a genuine dispute of fact for trial).

Bullock asserted in an unsworn filing that he "wrote several appeals to Jason Woosley . . . on several occasions," Resp., DN 37 at 4, and that he "would write ATTN J1 Jason Woosley on the back and front of [his] grievance forms and none of those forms would EVER be responded to." *Id.* at 8. However, "ATTN J1 Jason Woosley" does not appear on this grievance form. *See* Grievance No. 10380, DN 35-37. In fact, the phrase does not appear on any of the grievance forms. Additionally, there is no other evidence in the record to demonstrate that Bullock appealed this grievance as required by GCDC policy. DN 35-45 at 3.

Moreover, there is evidence in the record to support the opposite conclusion. Jailer Woosley has "final authority over [grievance] appeal[s]" at the GCDC, *id.*, and he testified that "while Mr. Bullock filed numerous grievances he never did follow through with an 'appeal' to me." Woosley Aff., DN 35-47 at 1. Instead, "Bullock would accept the response of a deputy or member of the administrative staff, but never 'appealed' any response to" Jailer Woosley. *Id.* Although Bullock disputes Jailer Woosley's affidavit in an unsworn filing, Resp., DN 37 at 4, he did not place any evidence into the record to demonstrate a genuine dispute of fact for trial. Such is insufficient to defeat a properly supported summary judgment motion, *Viergutz*, 375 F. App'x at 485; *Anderson*, 477 U.S. at 248–49, and Bullock was warned of same. Order, DN 32 at 2. Thus, Jailer Woosley's affidavit is uncontroverted.

There being no genuine dispute of material fact, Bullock's failure to appeal Grievance No. 10380 in conformity with GCDC policy means he failed to comply with the PLRA's mandatory exhaustion requirement. *Woodford*, 548 U.S. at 90. Thus, Officer Alexander and Nurse Wilson are entitled to a summary judgment.

### 3. Bullock did not appeal Grievance Nos. 9749 and 9755, which implicated Jailer Woosley.

Only two grievances implicate Jailer Woosley: Grievance Nos. 9749, DN 37-1 at 2, and 9755, DN 37-1 at 8.

As was the case with Grievance No. 10380, there is simply no record evidence to support Bullock's unsworn contention that he appealed the informal disposition of these grievances in conformity with GCDC policy. DN 35-45 at 3; *see Laster*, 746 F.3d at 726. Indeed, these grievances do not contain the "ATTN J1 Jason Woosley" notation that Bullock asserts should appear on his appeals. Resp., DN 37 at 8. Moreover, Jailer Woosley testified that Bullock never fully appealed the disposition of any grievance, and his testimony is uncontroverted. Woosley Aff., DN 35-47 at 1.

There being no genuine dispute of material fact, Bullock's failure to appeal Grievance Nos. 9749 and 9755 in conformity with GCDC policy means he failed to comply with the PLRA's mandatory exhaustion requirement. *Woodford*, 548 U.S. at 90. Thus, Jailer Woosley is entitled to a summary judgment.

### III. Conclusion

Simply put, it is uncontroverted that Bullock did not comply with the PLRA's mandatory exhaustion requirement as to any of his claims against the defendants, so the defendants are entitled to a summary judgment. Thus, the court concludes that the defendants' Motion for Summary Judgment [DN 35] must be and hereby is **GRANTED** and Bullock's Motion for Summary

Judgment [DN 38] must be and hereby is **DENIED**. A separate judgment will be entered contemporaneously with this Memorandum Opinion and Order.

    **IT IS SO ORDERED.**

January 18, 2024

Charles R. Simpson III, Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
        Counsel of Record